BARI R. GORDON, PLAINTIFF, v.
MICHAEL GORDON, DEFENDANT.

Superior Court of New Jersey
Chancery Division
(Matrimonial)

Decided January 14, 1976

Mr. *Ernest Prupis* for plaintiff (*Messrs. Weltchek, Prupis & Ritz,* attorneys).

Mr. *Elliot H. Gourvitz* for defendant (*Messrs. Marx and Gourvitz,* attorneys).

GRIFFIN, J. C. C., Temporarily Assigned. Plaintiff sued for separate maintenance for herself and the adopted child of the marriage pursuant to *N. J. S. A.* 2A:34–24. Defendant counterclaimed for visitation.

At the close of plaintiff's case defendant moved to dismiss. Decision was reserved until the completion of the trial.

The parties were married in January 1968. Jon was born on October 6, 1971 and thereafter adopted by the parties. On August 30, 1974 defendant husband returned from work to find his wife, child and most of the household furnishings gone. The complaint did not allege, nor did plaintiff prove, any abandonment or separation by the husband.

The pertinent portion of *N. J. S. A.* 2A:34–24 states:

> If a husband, without justifiable cause, shall abandon his wife or separate himself from her and refuse or neglect to maintain and provide for her, the court may order suitable support and maintenance to be paid and provided by the husband for the wife and her children, or any of them, by their marriage, or to be made out of his property and for such time as the nature of the case and circumstances of the parties render suitable and proper.

It has long been the law in this State that an action for separate maintenance cannot be sustained when the wife deserts the husband. *Eldredge v. Eldredge,* 38 *N. J. Super.* 509 (Ch. Div. 1955); *Starkey v. Starkey,* 21 *N. J. Eq.* 135 (Ch. 1870).

Plaintiff argues, however, that this law should be no longer applicable. The divorce reform act passed in 1971

(*N. J. S. A.* 2A:34–1 *et seq.*) permits alimony to a faulting spouse and recognizes a no fault ground for divorce.

In essence, plaintiff argues that the statute relating to separate maintenance suits (*N. J. S. A.* 2A:34–24) is repealed by implication by *N. J. S. A.* 2A:34–1 *et seq.*

The cases are legion which hold that repeal by implication is not favored. See *New Jersey P.B.A. v. Morristown,* 65 *N. J.* 160, 164 (1974), and cases cited therein. In the absence of an express repeal the indication of intention by the Legislature to repeal a prior act must be clear and compelling. A strong presumption exists against such intention. *Loboda v. Clark Tp.,* 40 *N. J.* 424, 435 (1963). The Legislature thoroughly revised our divorce law in 1971, yet made no amendment to section 24 concerning actions for separate maintenance.

\* \* \* [I]n enactment of amendments, the earlier statute on the same subject is generally presumed to have been within the knowledge and view of the Legislature, which is regarded as having adopted a new statute in light thereof and in reference thereto. *Matawan v. Monmouth Cty. Tax Bd.,* 51 *N. J.* 291, 298 (1968).

Thus, far from suggesting an implied repeal, all indications point to a purposeful intention to preserve section 24 as is. "[W]here the statutory provisions may reasonably stand together, each in its own particular sphere of action, there is not the repugnancy importing the design to repeal the earlier provision." *Swede v. Clifton,* 22 *N. J.* 303, 317 (1956). The court rejects plaintiff's argument on this point.

There is a sharp distinction between the obligation of the deserting husband to support and the obligation of the deserted husband. The first comes within the provisions of the separate maintenance statute. The second does not. To permit support based on the mere separation by the wife would encourage the termination of marriages and defeat the purpose of the required 18 month separation. Support for the wife is denied.

The issue of support for the child remains. The statute, *N. J. S. A.* 2A:34–24, refers to support for wife and chil-

dren. Hence, it might follow that if one fails, the other must also. But the child has done no wrong. Other law affects the interests of children. The court in *Turney v. Nooney,* 21 *N. J. Super.* 522 (App. Div. 1952), held:

Parents are equally charged with their children's care, nurture, education and welfare. *R.S.* 9:2–4. And see *Kopack v. Polzer,* 5 *N. J. Super.* 114; *affirmed* 4 *N. J.* 327 (1950). When the family is living together as a unit, the father is under a duty to support the family, including his wife and small children. And the father and husband cannot, by his own wrongdoing, drive wife or child away from his home and thereby relieve himself of his duty to support them, But when the wife is the wrongdoer, when she deserts her husband, he is under no legal duty to support her. *Yule v. Yule,* 10 *N. J. Eq.* 138 (Ch. 1854); *Foss v. Hartwell,* 168 *Mass.* 66, 46 *N.E.* 411, 37 *L. R. A.* 589 (Mass. Sup. Jud. Ct. 1897). And in such case where the father desires to keep the child in his own home and to maintain it there, yet the court, because of the child's youth, or for other sufficient reason, grants the mother's petition for custody, is the father obligated to pay the mother for the support of the child? Speaking in general terms, we know of no such obligation; it did not exist at common law; it cannot be spelled out of the statutes. See 67 *C. J. S., Parent and Child,* § 15, p. 693, and 27 *C. J. S., Divorce,* § 319, p. 1204–1206. Of course, in individual cases, the circumstances may lead to an order that the father pay. *Danzi v. Danzi,* 142 *N. J. Eq.* 662 (E. & A. 1948), is a case of that character.

The statute directs the court to make such order "touching the care, custody, education and maintenance of the children, or any of them, as the circumstances of the parties and the nature of the case shall render fit, reasonable and just." *R. S.* 2:50–37. The primary consideration is the welfare of the child. *Seitz v. Seitz,* 1 *N. J. Super.* 234 (App. Div. 1949). If the mother needs the father's financial assistance in order properly to maintain the child, undoubtedly the father would be required to help. [at 525]

Does the mother need the father's financial assistance? Will the child suffer for want of it?

The wife earns $10,800 gross as a school teacher. She received about $23,000 from the sale of the house in July 1975. Her parents are well to do and assist her.

█ The husband earned $50,000 to $60,000 a year, plus collateral benefits, until she left. He was fired the next day. He worked for her father. He has been on unemployment

compensation and casual jobs until he found employment at a salary slightly higher than that of his wife. He wishes to help support the child, however. The *pendente lite* order at $25 a week shall remain in effect.

The husband is granted visitation from 10 A.M. Saturday morning to 7 P.M. Sunday night every other weekend. In addition, he may take the child from 5:30 to 7:30 P.M. on Wednesday evenings. Holidays shall be divided.

Under the circumstances of this case, no counsel fees or costs are awarded.